So we're happy to hear argument in our fourth case, No. 17-1187. Mr. Wolfman, whenever you're ready. Thank you, Your Honors. May it please the Defendant, I want to cover two items here in argument. First, the FLSA does not permit working hour agreements that are unreasonable, and it prohibits an employer from counting room and board as wages without contemporaneous records. Wait a minute. Before you get into all that, I have a jurisdictional question to raise really for both parties, and that is whether or not we have a final appealable order here. Obviously, the Court entered an order that granted the Defendant's summary judgment motion, and it does, obviously, it addresses all the federal wage and hour claims. Where does it address the state claims that you raise? Okay, so. You say they're not preempted, they can stand alone. Where does the state court address those? Well, let's start with the document, I think, Your Honor, that you were referring to, which is the written order at 924. That's the only written order in the case, and I think these are the key things. Judgment said he grants the Defendant's cross motion for summary judgment and says, quote, all counts in the complaint are dismissed with prejudice, and he directs the Court to close the case. Now, there were, it was a four-count complaint. Only one of the counts was federal, so I think it's plain, with all respect, that he's intending to dismiss all four counts. Right, I don't think there's any doubt that he was dismissing it, but what I'm trying to get at is that just entering an order that says counts are dismissed, where the Court never addresses those, raises a question about whether there is a final, in my mind, whether there's a final appealable order. I think it, again, with respect, I think it doesn't, given what occurred here, and if I might take a second and take you through it. There was a hearing on summary judgment, and at JA 871 at line 17, Judge Mazzetti asked the Defendant's counsel to address the state law claims, if you're going to try to dispose the case based on the homeworker exception. So, at that point, Judge Mazzetti obviously knows the claims are in the case because he asked counsel to address it. Then at 871 through 873, he hears argument on the state law claims and the defense of preemption, and then Judge Mazzetti doesn't get back off the bench. He then gives an oral opinion, and at 907 and 910, he identifies, again, the facts that there are state law claims, three of them. There are two state law claims and really a local claim. That's at 907 and 910, and then it is true, and I think this is what you're referring to, Judge Agee. When he does his analysis, he doesn't explicitly deal with preemption, but again, at 871 through 873, he clearly knows that that's the argument. He clearly knows that all four claims are in front of him. Well, that's my question. I mean, everything you've said is correct. It's in the record, and that was my question. Does it never ... I can't find a place where the court ever comes to grips with making a decision on the state of the law. Again, I think with all respect, that's not correct because I don't think there is any doctrine that I know of that says if someone's giving a speaking order, which is what occurred in this case, they have to address every matter. The court is clear that it knows that the claims are before it, takes argument on it, and then it's not simply the written order that I referred to. I referred to the written order at 994, which is clear as day. All counts in the complaint are dismissed. The clerk shall close the case, but even at the end of his speaking order, he grants full summary judgment to the defendant and therefore doesn't reach the partial summary judgment on the ground that it's mooted out. So he says that the cross-motion for summary judgment shall be granted, and the cross-motion for summary judgment, of course, was as to all the claims. May I, if I might ... There's very little law, I think, on the topic that you're raising. I think you're raising ... You said that doesn't address the legal analysis of every claim, but you have an order that dismisses all counts with prejudice. I found no authority in this circuit. I did find that the two Second Circuit precedents, which taken together, I think, support our position. Here's what Wright and Miller says in taking a look at those decisions. What counts is whether the court, in fact, intended to dismiss the entire action. I don't think there's any doubt if you look at what's at 924, the court intended to dismiss the entire action. All right. I don't want to take up any more of your time with that, so head on to the merits. Go on to the merits. Yes. So the merits, as I say, there are two issues on both scores. The district court was wrong, both on the question of the unreasonableness of the agreement and on the question of keeping time records. Let me start first with the question of the agreement. A working hours agreement under the FLSA must reasonably approximate the hours actually worked and provide at least the minimum wage. The agreement does not do that for two reasons. First, a reasonable agreement must indicate the number of hours that it purports to compensate. This agreement did not do that, at least not on the defendant's terms of 29 hours a week. But without that reasonableness. The remedy, therefore, is for the trier of fact to find the hours that Ms. Balbette actually worked and require compensation at the lawful rates. And that's not unusual. The cases in the reporters are legion. That's standard FLSA practice when there's dispute of facts and judges or jury makes findings as to how many hours there were and then just makes the rote calculation. So let me, that's our basic argument is the agreement. It's just not reasonable because it doesn't purport to state a number of hours. But let me turn to something further. Let's say we assume counterfactually that the agreement demands compensation at 29 hours and no more. Twenty-nine hours would be unreasonable given the demands of the contract itself and Ms. Balbette's actual workload. Defendants don't dispute that she worked seven nights a week, that she managed the in social media presence, that she did the laundry, did the yard work and many other tasks that benefited the in. So is your argument that the agreement is unreasonable or that you can't tell from the agreement how many hours you're expected to work or both? Both and let me, if I might take your last point first. If the agreement is just impossible to discern the number of hours on their reading of the contract because they say it's clearly 29, then I think it's clearly unreasonable as a matter of law. But if, as I say, going to I think what your first point was, we're arguing that alternatively, that even if you accept that the contract was clear in terms of the number of hours, which is I think quite hard to accept given what the contract says on page 611, the agreement is unreasonable given what it required her to do. It required her to be there seven nights a week. It required her to do the social media tasks. I think that at least to satisfy me, you're going to have to address 29 CFR 785. Now I think you can do that, but the case for the district court centered on that. And so tell us how that works here. Yes, and let me apologize because in essence, that's what I believe I was addressing. But if you don't marry it to that regulation, we don't understand what your position is about how all these principles work together. What 785.23 does is it presupposes there's an agreement about the number of hours. So somebody, for instance, this court's decision in Garofalo assumed the agreement was 40 hours a week. Well, there may have been some weeks that were a little below, some weeks a little above. And in that agreement, the employers were actually instructed not to work more than 40 hours. Well, it's a pretty good agreement. Here, the agreement doesn't state 29 hours. That's what they say. Yes, I understand about the hours, but I thought, maybe I misunderstood your argument, that in addition to hours, you thought that the compensation had not been fixed and that you couldn't tell that. Well, let me just say that the compensation doesn't have to be fixed by the agreement. The compensation is a matter of law, $7 an hour, $9 an hour. And that's my second argument, if you'd like me to turn to it, about counting the room and board. But I want to, you know, that's the question of compensation in the case. But here we're talking about hours. We have an agreement about how much the lodging is worth. Right? Absolutely right. And in these other cases, we did have that agreement. That is true as well. So that is true as well. That's another basis. What they have said the lodging is worth is what they could rent it to somebody for, although they didn't rent it very often, because we know from the record that this hotel doesn't have a very large occupancy. Your Honor, they never rented the room in the basement, Your Honor. I'm not talking about the room in the basement. They talk about this big, you know, we have all this fight about which room is bigger. But there are other rooms, and they say what the, what the compensation was was the value of the room, what they could charge somebody for rental of a room in this hotel, and what they could charge somebody for breakfast in this hotel, which was $7 a day. And that's what they got for the figures for compensation. Are you not challenging that, too? We certainly are. That was the second argument that I hadn't gotten to. Well, that was the distinguishing thing between this case and the earlier case that, in which we did employ 29 CFR 785. There was no disagreement about the compensation in those cases. That is correct. There was no disagreement in those cases about the room and board. If you'd like, that is correct. There was no disagreement in those cases, and there is here. My argument was that if you assume there's 29 hours worth, it still fails because the amount of cash compensation is deficient, and because of the regulation, you can't count any of this other stuff. Is that your argument? That is correct. That is one of our arguments, and that is the argument, and that argument is even assuming the 29 hours is correct, you can't count the room and board for numerous reasons. One, there was no recordkeeping, and there's a regulation that requires recordkeeping and an unbroken line of authority that when there is no recordkeeping, you may not count room and board. That's point one, and second, even if you assume that we can overlook the failure of recordkeeping, the problem here is they use these unproved inflated numbers that include profit, have to do with what they could rent upstairs rooms for, and so forth, and that's not permissible. The regulations specifically say that they're in a position that since they didn't keep contemporary records and they don't account for taking profit out and all that sort of stuff, that none of their evidence comes in. That is correct. That's our principal argument, but our secondary argument is that even if you overlook the regulations and the authority that requires the recordkeeping, here it wasn't just you can't use this type of evidence because the regulations specifically say that you may not include profit, that the only question is cost to the employer, and the basement apartment imposed no cost to the employer. They never rented it out. In fact, they admit at several places in the record, take a look, for instance, at JA-431, that they had no opportunity cost there. So, again, let me just repeat, two-fold argument. One is they need records, they can't count it at all, but secondarily, they never prove this up, and you have to remember... What is the correct resolution here? Well, the correct resolution is if under the first argument that we made, the correct resolution would say that this is an unreasonable agreement, reverse remand for a determination of what her pay should be for all hours actually worked. Secondarily, if you don't adopt that argument, and we believe it's a strong one, then at the very least, the court should determine if there are disputed facts as to whether the agreement was reasonable, then that should go to the trier fact, and third, even if you assume this is a 29-hour agreement, then there should be a remand to give Ms. Balbed the damages, excuse me, the loss of wages she is entitled to in light of the fact that you cannot count the room and board, because it is undisputed in this case. If you do not count the room and board, she was not paid the minimum wage. Okay. Thank you. I believe we're into the afternoon, so good afternoon, Your Honors. Brian Maugh for the appellees. I don't have too much to add to the issue of finality. I generally agree with what counsel for the appellant said. I would also note the Kerr first case, which is a statute, which stated that an order is final under section 1291 if it, quote, ends litigation on the merits. I do believe we have the order that states it's dismissing all counts in the complaint with prejudice and therefore ended the litigation, and as counsel noted, there was discussion at the hearing regarding the state law claims. There was also extensive briefing on the state law claims, so I do think that order ended all counts, ended the state law claims, and therefore was a final order. Moving on to the merits. As the Court is aware, section 785.23 provides that if there is a reasonable written agreement between a living employee and an employer, that that agreement controls basically the entire relationship in terms of what hours the employee is required to work and how much compensation that employee is entitled to. Now, that agreement states that the employee, Ms. Balbett, was required to work 29 hours plus checking guests in. This is the one at 611. Correct, Your Honor. And Ms. Balbett's counsel before the District Court agreed that the agreement provided for 29 hours of work, so that was never disputed. There was numerous the District Court and the appellees all represented and agreed that the agreement requires 29 hours of work. I thought the appellant's counsel disagreed that there was a concession to that. They disagreed on appeal, but before the District Court, when they were represented by different counsel, that counsel repeatedly represented to the Court that, yes, the agreement provides for 29 hours of work. That was cited on page 27 and 28 of the appellee's brief, and those pages contain the numerous... There's something in the... Do we have a cite in the record that we can find the concession at 29 hours? Yes, Your Honor. Those pages of our brief contain the citations, and those citations are rather numerous. What's your best one? In their motion, their very motion for partial summary judgment, pages 15, 19, and 20, they represented that the agreement requires 29 hours of work. I'm sorry. What's the cite? It was actually their motion for partial summary judgment. Just give me the JA cite. The motion itself was not in the record, since it was a motion. Okay. Give me the JA cite. The JA cite would be... 860? Does that have it? No, it's here somewhere. I believe it's 878, 880. Yes, that's it. 878 and 880. Do you contend that you complied with 29 CFR 516.27 on record keeping? No, Your Honor. And the whole purpose of 75.23, the reasonable agreement provision, is to specifically address this type of specific, unique situation where you have a live-in employee living on the residence, which makes it difficult, if not impossible, to actually keep track of the hours the employee is working or not working. That's the very purpose of that 75.23, is to address these situations. And that's why it allows you to enter into a reasonable agreement, which is different from every other employment relationship or employer-employee relationship. This is very much not the norm. The norm is you have to keep records, you have to keep track of the hours. This is a very unique situation. It only applies to live-in employees. The reason why all the cases that we cited that address 75.23, the Myers case, the Garofalo case, the cases for the other circuit courts, Sixth Circuit, Brock, all these cases, Krauss case from the Third Circuit, none of them address these record-keeping requirements. Well, doesn't 785 of the regulations explicitly incorporate part of the record-keeping requirement?  The 785.23 does not anywhere specifically incorporate a record-keeping requirement. And, again, the case has set forth that the whole purpose of this unique regulation is because it is difficult, if not impossible, to keep track of the hours being worked. So that's the reason why you have the regulation in the first place, is because the regulation does specifically recognize that in this situation it's difficult to keep track of hours, and that's why it creates this exception to allow a reasonable agreement to be sufficient. And, again, all the cases analyzing 78.25... Yes, but those cases, that's what I went through with your colleague. There was agreement with respect to what the compensation was. There isn't agreement here as to what the compensation was. You've put in the fair market value, I guess, of the room and lodging, but that's not what you use in determining compensation. That's just not proper. I'm sorry, Your Honor. It's a cost to you. It's not what your profit would be. Well, actually, in the Myers case, the court did use the rental value of the property, specifically used the rental value, not actual cost. But it wasn't contested, was it? I don't know if it was clear if it was contested or not, but a couple... Is that our case? It wasn't contested there. It may or may not have been, but the court used the rental value... Was there a point here? Here, let me take you back to JA 878. This takes you back to hours. Right. So, the court asked how, I guess Ms. Bansal was counsel for the plaintiff below, asked her what her calculation equals. She says 29 hours, and that's what you're saying the contract requires. She answers, at a minimum, if you look to the right of the column, which is on 611, with the guest room, etc., there's additional time that would be required for an ambiguous number of hours that might be required. So, I'm not sure I could say that that was a concession of 29 hours. It seems like it leaves it fairly open-ended, and I take it as part of opposing counsel's argument that if the agreement is to be valid for purposes of the regulation, you have to have a determinable method of figuring out how many hours there are. So, it looks like, to me, when you look at this on 611, it's hard to figure out how many hours there are. A couple things to that, Your Honor. There is no requirement in 785.23 that the agreement specifically set forth the number of hours. It says the agreement is reasonable if it takes into consideration all the pertinent facts, which leaves it to the judge, fact and government. Yes, but Judge Agee was talking about your representation that there had been a concession here, not a determination of reasonableness by the district court. Maybe it's reasonable, maybe it's not, but a concession is different than a determination by the district court. Certainly, and I guess, going to that one point, the only other additional time is the check-in time. The only evidence in the record was from Appellee's that check-in time takes less than 5 minutes to perform. That was never controverted. That's the only evidence in the record, uncontroverted, that takes less than 5 minutes. You're familiar with the whole business, for example, in hospitals, people will be on call. I mean, there's an argument here that she had to be available to check in, whether she was checking people in or not. Maybe some district court should have made an assessment of how much of her time, how much time should be given to that activity. And I would say that there was testimony on that issue, and the testimony was that it took less than 5 minutes. Do you understand that she might have to be waiting? You know, you don't know what customer is coming down the road. Well, again, the in was... That would be different than actually checking someone in, waiting to see if there are people. Maybe that's not reasonable, but we don't really know. Yeah, and again, this regulation 7825.23, it is different from every other case. So, again, the issue is, is the agreement reasonable under all the facts and circumstances? And if a judge looks at it and says, okay, I think that this agreement requires 29 hours plus some de minimis time for checking in, and compensates $800 cash, anywhere from $850 to $1,800 in a room value, the statute leaves it up to the judge to make determinations and looking at all those facts, is it reasonable? If it is, then that's it. But we know as actual fact that the compensation that was used by the district court was not reasonable because it factored in your profit from both the food and lodging. We know that. And again, this regulation does not incorporate the... The regulation only goes to reasonable agreements. So we know if that is what you based it on, that's not reasonable. Well, again, I think the Myers, Court of Myers... Was agreed to in Myers, what the compensation was. My point is, is if it was improper to use rental value, then the court... It wouldn't be improper. It's not improper in and of itself if it's agreed to. Well, I would also argue that she never controverted that evidence that was put in the record with anything. So, essentially, she has conceded or at least weighed the argument as to it because there was never any evidence put into the record that this room wasn't worth the value that we represented that it was. I thought there was representation in the record that they never rented this room. So that would seem to me to be... No. Okay. Yeah, two things. That's not in the record. No, no. The value of the room was based upon two things. One was Ms. McKenday's 14 years of experience renting rooms in the area and in the inn. And the second was, yes, that the room that the appellant rented as a guest was $450 a week. And that room was smaller, had less amenities. The room she stayed in as innkeeper had a queen bed and a private bathroom. So that was the evidence put in the record in terms of the value of the room. That evidence was never controverted by the appellant. And she never presented any evidence to district court to challenge that evaluation and, therefore, has weighed the argument. But, again, I would say if it was improper to use the value or rental value, I still think the Court of Myers would not have used it. Even if it was not contested... That was a dispute about hours. So I don't think it helps you with respect to these other items because those things just never came up in Myers. And, again, in none of the cases addressing 785.23 do any of the courts address or say it has to be at the actual cost and never refer to any of the actual costs. And there were disputes over the value being provided under the agreement. I don't think that's an accidental omission. This regulation is a sui generis regulation. The court has to look at all the facts. And I do think that the value of the room, the regulations regarding actual costs, those apply to, specifically apply, by their own words, to employers who are seeking a credit for wages for lodging. So, again, the employer is not seeking, employees are not seeking a credit towards the wage of the employee under Section 203M. That's not what's being done here. That's what those actual cost regulations apply to. They only apply when an employer is seeking to include that facility cost in the wage of the employee as a credit. And, again, that's completely different. Can I just ask you one final question? If we should decide that, and I know this isn't your position, I know you don't agree with it, but you get to make that call, that the record-keeping regulations did apply to you and that the compensation was in dispute and that there was no, and that the compensation that was arrived at here was unreasonable and that the hours were not determined anyway, what would be the resolution here? I understand that we would reverse. And is it impossible for, do we just give her whatever she claims? What would you suggest we do? What we would order on remand? You can pass on this, but I'm giving you an opportunity to give us your views. If you don't want to give them, that's fine. I guess the only thing I would say, which would practically be a non-segwiter, was to go back to the regulations and say this is the point of the regulations. But you understand, you do understand my question. We rejected that argument. And now I'm giving you an opportunity to say what you would say to the district court. How should the district court proceed then? We will be telling the district court to do something. I'm asking you for your input. And if you don't want to give any, fine. I'm not sure, Your Honor. I mean, it sounds like you're asking for me to give instructions as to a legal ruling that I would disagree with. And so, thereby, by going along with that, I would sort of be. We're just assuming we're not deciding. Yeah, I guess I just sort of have a difficult answer in the question. In other words, what I'm trying to do is to say can the eggs be unscrambled? I mean, if the eggs can't be unscrambled, because there weren't records, we should hold that there should be records. Could, for example, the district court have the employer try to reconstitute records? Would that be a possible thing that could be done? I believe, actually, the employer did try to do that at some point to try to estimate the hours worked. But, again, it was not contemporaneous. I understand that. Yeah, and so, you know, I guess I just come back to, you know, the plaintiff is claiming that she worked 112 hours a week. Yes, that seems unbelievable. But then the other hand, your claims also seem unbelievable. So what we're trying to do is to get a way that the district court can make some determinations here, some guidelines to the district court. I don't probably have much to add because I think the regulation 785.23 leads it to the district court's discretion to determine is this agreement reasonable in your opinion, looking at the hours required and the compensation provided. And I think the district court did that. They looked at all the facts. They looked at all the compensation, the hours required, and the case law, and said, yes, this agreement is reasonable. I think that's what the statute does. It gives the district court that discretion to make that determination, looking at all the facts and circumstances of the entire relationship. Okay. Thank you. Thank you. Sorry. You're through, aren't you? Oh, it looks like I have two minutes left. Oh, I'm sorry. I thought you were wrapping up. I was just going to note, Your Honor, that Ms. Balbett herself admitted that it was impossible for the inn to track and record her hours. She actually said that in her deposition that it would have been impossible for them to know when she was working and when she was not working. She also admitted to doing various sort of personal pet projects around the inn. And, again, this is why it makes it so difficult with a living employee to actually keep an accurate record of their hours working. She did various sort of pet projects. She even included making holiday decorations. She said she spent hours every day for the better part of the week doing. These were things that were not required of her by the agreement or by the inn. She was never asked to do them. I would also note, as noted in the brief, that this inn was vacant more often than it was occupied. The majority of rooms were vacant more often than it was occupied. It was not a busy business. There was not a lot of work to be done. And so, again, it's unreasonable as a matter of law to expect an employer is going to pay somebody 50 hours, 60 hours, 70 hours, 100 hours for work for an inn that's practically vacant more often than it's not. That's the Kelly case from this court, which stated it's not realistic to assume that the employer would to perform the tasks assigned to the employee. I would also want to note, as noted in the brief, that the standard for whether or not the rooms are sufficient is whether or not they provide adequate sleeping facilities. As noted by the Eighth Circuit in the Bouchard case, sleeping facilities are adequate as long as the employer furnished the employee with a separate sleeping room, which allowed the employee to sleep through the night. Again, the appellant was provided with a queen-size bed, room with a private bathroom, window, fire alarm, and so forth, and, therefore, was an adequate sleeping facility. Unless Your Honors have any other questions, I have nothing further. Thank you very much. Thank you. Your Honors, I'd like to start off where Judge Motz's last question ended. You know, what can be done on remand if there is a remand? And all I'd like to say on that, there's obviously disputes as to the number of hours, and I'll just repeat that that's standard fare in FLSA cases. So if the court remands, it won't be an unusual prospect for remand, just determining the number of hours of actual work. If I could now, I do want to move. The reasonableness of the compensation. Excuse me? What about the reasonableness of the compensation and the lack of records? I think the lack of records means they cannot count room and board for the reasons stated in our brief, and the authorities say that. You can't do it in hindsight. The authorities indicate that if you haven't kept the records, which they concede, then you can't do in hindsight calculation. But again, I don't think it matters here. Well, if they send it back for a trial, why couldn't they put on evidence from whatever witness that says, you know, this room is worth whatever it is in that part of Baltimore County? They could do that, but I think that's not permitted. That would be barred as a matter of law because the failure to have contemporaneous. The records keeping. Yeah, that's right. It's the policy, the record keeping requirements. But I do want to state, and then I'll move on, which is that the principal thing would be the. Well, if the agreement doesn't apply, why would those regulations apply? Oh, no, the regulations just apply across the board. The regulations for room and board have been in all sorts of situations, even where there wouldn't be a 785.23 agreement. They're just generally binding applications for how one calculates room and board and what the record keeping requirements are to do so. If I might, I want to turn and just give you citations, if I might, because Judge Agee, you asked about the question of this purported concession on the 29 hours. We take that up on page 15 of our reply brief and in footnote five. And I just want to add one thing because I don't need to read it to you, but I want to add one thing. This was on they had the burden on their motion for summary judgment. We cross moved for summary judgment simply on the limited theory that even if you did think of this as 29 hours, they hadn't paid the minimum wage because you can't count room and board. But in other places in our memorandum, we certainly said that wasn't a reasonable agreement and therefore you had to calculate all hours worked. I do want to go to the question I think that is implicated by a colloquy that Judge Motz was having with my opposing counsel, which take a look at 785.23. Not only is it not about counting room and board at all, and it's only about hours, but it says the following. Ordinarily, the worker may engage in normal private pursuits and thus have enough time for eating, sleeping, entertainment, and other periods of complete freedom. And the testimony in this case is undisputed that every evening, seven nights a week, she did not have periods of complete freedom. Not only was she doing all the other tasks, such as the social media activities and repairing and cleaning, but she was required to be there. She not only didn't have complete freedom, she didn't have any freedom at all. She had to be there every night until 10 o'clock, just like the person who sits all night at the Holiday Inn. And then if I might, I just want to, this goes to a question you asked, Judge Floyd. There is no question that the Hours Works regulations at 785, including 785.23, cross-reference the record-keeping requirements. There's an explicit cross-reference we cited both in our opening brief and our reply brief. That would be a nonsensical cross-reference if the record-keeping requirements did not apply here. Unless the court has anything further, I will conclude. Thank you very much. Thank you. We will ask our clerk to adjourn court, and then we'll come down and say a little to the lawyers. This honorable court shall adjourn until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, G. Steven Agee, Henry F. Floyd